**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-CR-413-CKK** |
| | : | |
| **DOMINIC BOX,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS COUNT ONE**

Although the parties have agreed to proceed by stipulated trial (*see* ECF 73) to resolve all counts in the operative indictment (ECF 63), because the Court has permitted the defendant to file this sole pretrial motion in order to preserve his appellate rights as to Count One, the United States respectfully files this response in opposition to defendant Dominic Box's Motion to Dismiss Count One. ECF 75.

The Court should deny Box's motion because it relies on arguments rejected by the D.C. Circuit in *Fischer* and *Robertson. United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023); *United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023). Under these controlling decisions, the Electoral College vote is a "proceeding before the Congress," Section 1512 is not vague as applied to the defendant's conduct, "corruptly" encompasses the defendant's conduct, and the defendant's actions are prohibited by the obstruction statute. This Court's opinions denying similar motions are in accord. *See, e.g., United States v. Spencer*, No. 21-CR-147-1 (CKK), 2023 WL 6795858 (D.D.C. Oct. 13, 2023); *United States v. Grider*, 617 F. Supp. 3d 42 (D.D.C. 2022).  Box also uses the motion to advance claims of factual innocence that are improper on a motion to dismiss (and, in any event, are not supported by the evidence). The Court should deny his motion.

1

## PROCEDURAL HISTORY

On December 22, 2022, the defendant was charged by criminal complaint with various misdemeanors crimes related to his criminal conduct at the United States Capitol Building on January 6, 2021. *See* ECF 1. After further investigation, the government notified the defendant that it intended to supersede to an indictment, which would charge the defendant with additional felony crimes. *See* June 8, 2023 Minute Entry. On August 2, 2023, the defendant signed a pre-indictment plea of guilty to one count of violating 18 U.S.C. §§ 1512(c)(2).

 However, shortly after signing the plea agreement, the defendant violated his pretrial conditions by twice driving under the influence, crimes for which he was then incarcerated in Florida. *See, e.g.,* July 17, 2023 Minute Order. His conditions in this criminal case were then revoked. *See* ECF 49. After a number of delays for various reasons, the Court set a change of plea hearing on the Section 1512(c)(2) plea for January 19, 2024. *See* December 11, 2023 Minute Order. Ultimately, however, the defendant then changed course, fired his prior attorney, hired his current counsel, and decided he did not wish to proceed to a change of plea hearing. *See, e.g.,* ECF 54.

On February 28, 2024, a grand jury returned an seven count indictment charging the defendant with the following charges: one count of violating 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction Of An Official Proceeding); two counts of violating 18 U.S.C. § 231(a)(3) (Civil Disorder); one count of violating 18 U.S.C. § 1752(a)(1) (Entering And Remaining In A Restricted Building Or Grounds); one count of violating 18 U.S.C. § 1752(a)(2) (Disorderly And Disruptive Conduct In A Restricted Building Or Grounds); one count of violating 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct on Capitol Grounds and in any of the Capitol Buildings); and, one count of

violating 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in the Capitol Building).

The defendant was transferred to the custody of the United States Marshals Service (USMS) around November 2023, where he has remained since that time.

## FACTUAL BACKGROUND

Although the defendant stipulated to twenty-fives pages of facts detailing his extensive criminal conduct and intent leading up to, on, and following January 6, 2021,[1] and despite the fact that a motion to dismiss an indictment is not the proper forum to dispute facts, Box attempts in his Motion to sidestep the criminal nature of his conduct by painting himself as a mere journalist/photographer/cinematographer/videographer on January 6. *See, e.g.*, ECF 75 at 62.

The defendant does so despite this Court's and the D.C. Circuit's prior rulings rejecting similar arguments in similar circumstances. *See United States v. Rivera*, 607 F. Supp. 3d 1, 7 (D.D.C. 2022), *aff'd*, No. 22-3088, 2023 WL 8594077 at *2 (D.C. Cir. Dec. 12, 2023) (Where the defendant argued he "simply documented the events in the manner of a journalist," both this Court and the D.C. Circuit disagreed: "A rational trier of fact could have readily determined that Rivera did more than merely document the events of January 6th . . . In particular, the evidence supported the district court's conclusion that he was in league with the rioters and shared their intent to disrupt Congress. The government introduced evidence, for instance, that Rivera assisted other rioters in breaching the Capitol building, shouting to them that there was 'an easier way up!' when he saw some of them attempting to climb a wall. . . . In addition, Rivera entered and exited the Capitol

---

[1] The government incorporates by reference all facts to which the parties stipulated in ECF 73 as if set forth in full herein.

through broken windows, and he later told a friend that he 'had a great time.' Those are not the actions of a person who simply chronicled the events as a cinematographer, without any intent to disrupt Congress.").

The defendant also attempts to sidestep the criminal nature of his conduct despite stipulating to the following below facts, *inter alia*, which clearly demonstrate he was not an unbiased reporter or capturer of news content, but instead, like most January 6 defendants, was willing to resort to threatened violence to keep his preferred candidate in office.

\*     \*     \*

Leading up to January 6, 2021, Box was actively following the 2020 election results, and was knowledgeable about the Electoral College Vote process, a process he knew would be taking place in the United States Capitol Building on January 6, 2021.

On December 20, 2020, Box posted "Stoked for DC on the 6th. Should be wild!" on Facebook, which mimicked President Trump's language in a December 19, 2020 tweet, which stated, "Big protest in D.C. on January 6th. Be there, will be wild!"

Then, on January 6, 2021, the defendant did as follows:

- After attending the "Stop the Steal" rally, Box livestreamed himself on social media, where he said in relevant part as follows:

  "[Former] President Trump has called on everyone there to march down Pennsylvania Avenue. Well over 250,000 people headed towards the halls of Congress . . . I can't confirm that anybody has stormed the Capitol or broken in. But we're not there yet. We've heard reports of explosions and different things . . . But I don't know what you can do to stop a crowd this size with one thing on their mind. **After hearing the President speak, specify the numbers and ways in which this election was stolen from <u>us</u>, I can definitely say I would rather be on this side than the other.** There

4

are some very rightfully disgruntled individuals here. Hand to hand with cops? That I have not seen that. I would not be able to comment on that until I get up there."

- Before entering the U.S. Capitol building, Box observed police officers using pepper spray against individuals to try to deter individuals from getting closer to the inside of the Capitol building. But, rather than being deterred, Box stood near the bottom of the northwest staircases and began instructing other individuals about how to overcome the police's pepper spray. **He yelled, "Get water on your bandana! Water on your bandana!" He hoped that these instructions would permit individuals to withstand or at least attempt to withstand the effects of the pepper spray.**

- After the crowd ahead of him successfully forced the police to retreat all the way up the northwest stairs, Box stood back and took video as other individuals successfully broke into the U.S. Capitol by shattering and climbing through windows adjacent to the Senate Wing Door. **As he watched the individuals shatter windows and climb into the building through them, he exclaimed, "<u>We're</u> fucking in... holy shit!"** Then, he entered the Capitol through that door, the Senate Wing Door, at 2:14 p.m. He was among the first group of individuals to enter the building.

- Once inside, Box joined a crowd that overwhelmed officers and made its way into the Capitol's Crypt room in the basement level. As officers were forced to retreat from the arched doorway, **Box shouted, "Don't fuckin' tread on <u>us</u>!"**

- Less than a minute later, Box approached a Capitol Police officer who had been calling out to the crowd inside the Crypt. The officer was exclaiming things such as, "We don't need any more violence right now, all right? Calm down! We can just stand right here and talk it out, okay?" **Box then approached the officer and shouted at him, "<u>There's no talking, there's no fucking talking!</u>"**

- Also while inside the building, Box shared portions of his experience on Facebook. In one Facebook livestream video, for example, Box filmed individuals as they went up a staircase to the Capitol's second floor. He then stated: **"If you're watching this live, share right now! . . . Let's go!" Box also joined the crowd inside the Capitol as they chanted, "USA, USA . . . !"**

5

- Box exited and re-entered the building at least three times. After the third exit through the East Rotunda Doors, Box re-approached those doors, and reached out with his left hand toward the doors, which had smashed windows. Once individuals successfully fought to open the doors, **Box yelled and gestured with his right hand, in which he held a water bottle. Box then stepped to the side of the doorframe, pulled down his yellow bandana, turned toward the crowd and yelled, "<u>We</u> need more people!" He also actively celebrated as the mob near the East Rotunda Doors successfully warded off the police's attempt to keep the doors closed.**

Then, around 8 p.m. on the evening of January 6, 2021, Box engaged with a Facebook chat group as follows:

- Member 1: "Alrighty so then @Bandon, you seemed to condemn the siege today. We tried it legally, we waited and waited, we turned up and voted yesterday … We lost many feel we were cheated. What are we supposed to do?"
- Member 2: "Take the loss . [sic] Like any other person with honor"
- Box: "If <u>we</u> were cheated, I don't know that there is honor in 'taking' it."
- Member 3: "So we are to wait 4 years while the presidential power is further expanded and unchecked in a completely liberal government?"
  . . .
- Box: "If this blatant fraud is allowed to stand & happen I don't even know what to think"

Then, on January 11, 2021, Box and a Facebook friend exchanged the following messages:

- Box: "Yo I'm all good"
- Box: "Just laying low"
- Friend: "Why?? What happened"
- Friend: "Obviously something big if you're laying low"

Finally, sometime before October 2021, Box agreed to be interviewed for the HBO documentary "Four Hours at the Capitol." In the documentary, he acknowledged his presence in and around the U.S. Capitol on January 6, 2021. When describing when he first arrived at the Capitol and was looking out at individuals making their way toward the Capitol and the city in the

background, Box stated as follows: "As I'm going up the scaffolding and getting to the steps, there was a kid who probably captured the emotions I was having. I don't even know what the emotions—I mean I wa—**I was proud to see the American spirit that was on display**."

Box has stipulated that the above facts satisfy this Court's interpretation of the law as it currently stands for the Section 1512 charge.

## LEGAL STANDARDS

### I.   Motion to Dismiss Standard

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). A criminal defendant may move for dismissal based only on a defect in the indictment, such as a failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See United States v. Bingert*, 605 F. Supp. 3d 111, 117 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 17–18 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a

district court is limited to reviewing the <u>face</u> of the indictment and, more specifically, the <u>language</u> <u>used</u> to charge the crimes") (emphasis in original, quotation marks and citation omitted).

A charging document may also fail to state an offense if the statutory provision at issue does not apply to the charged conduct or if the statutory provision at issue is unconstitutional. *See, e.g., United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017) ("The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." (citation omitted)), *vacated on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). In considering a motion to dismiss, a court must accept the allegations in the indictment as true. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

## II.   <u>First Amendment Challenges</u>

With respect to a constitutional challenge to statutes charged in an indictment or information, a defendant may challenge a statute as unconstitutional on its face or as unconstitutional as applied to his or her conduct. *See generally United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016). A statute is facially overbroad under the First Amendment if it "prohibits a substantial amount of protected speech," relative to "the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008) (citing *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003)). The Supreme Court has emphasized that declaring a statute facially overbroad is "strong medicine," to be employed "sparingly and only as a last resort" where no "limiting construction" is possible. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "The mere fact that one can conceive of some impermissible applications of a statute is not enough to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). To justify facial invalidation, "a law's unconstitutional

applications must be realistic, not fanciful, and their number must be *substantially* disproportionate to the statute's lawful sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (emphasis added) (citations omitted).

When construing a First Amendment challenge to expressive activity on public property, the court should "identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). As relevant here, a restriction in a nonpublic forum is constitutional if it is reasonable given "the purpose of the forum and all the surrounding circumstances," and is viewpoint neutral. *Price v. Garland*, 45 F.4th 1059, 1068 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 2432 (2023).

## III. <u>Vagueness Doctrine</u>

An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Typical principles of statutory interpretation apply, and a statute is void for vagueness only if no saving construction is possible. *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017). "Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974). The "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute," and so a prohibition that might appear vague on its face can survive

a constitutional challenge if it "ha[s] been 'made specific' by the text or settled interpretations." *McHugh*, 583 F. Supp. 3d at 18–19 (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)).

The "touchstone" of fair notice "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. "[A] statutory term is not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *United States v. Bronstein*, 849 F.3d at 1107 (D.C. Cir. 2017) (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). Rather, "a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'" *Id.* (quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971)). "Accordingly, when the vagueness doctrine assesses a legal term's meaning to ordinary people, it is assessing meaning with the elementary rule of statutory interpretation: [w]ords receive their plain, obvious and common sense meaning, unless context furnishes some ground to control, qualify, or enlarge it." *Id.* at 1108 (citation and internal quotation marks omitted). In the First Amendment context in particular, while a statute may be vague "because it is unclear whether it regulates a substantial amount of protected speech . . . [however,] perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (2008) (citations omitted).

Turning to arbitrary and discriminatory enforcement, a court may invalidate a statute for vagueness where its applicability depends on "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.* at 306; *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (to avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the

statute"). "This category includes laws whose application turns on subjective judgments or preferences either of officers or of third parties." *Agnew v. D.C.*, 920 F.3d 49, 55 (D.C. Cir. 2019). However, a valid law may still entrust law enforcement with reasonably broad and flexible discretion, thus, "if the general class of offenses to which [a] statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise." *Id.* (quoting *United States v. Harriss*, 347 U.S. 612, 61 (1954)); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) ("[E]ven if the outermost boundaries of [a statute are] imprecise, any such uncertainty has little relevance . . . where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions.")).

## ARGUMENT

The defendant moves to dismiss Count One for a plethora of reasons.[2] These reasons have been explicitly rejected by the D.C. Circuit in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *United States v. Robertson*, 86 F.4th 355, 369 (D.C. Cir. 2023), *United States v. Brock,* No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024)), and in decisions by this Court. *See, e.g., United States v. Spencer*, No. 21-CR-147-1 (CKK), 2023 WL 6795858 (D.D.C. Oct. 13, 2023);

---

[2] When this Court granted defense's oral motion to exceed the page limit at the May 22, 2024 status conference, the Court explicitly directed the defendant to avoid repetitive and meandering arguments with the extra pages permitted by the Court's order. The motion ignores that directive and includes pages-long introductory sections, among other things, which repeat in great detail the very same content set forth in the substance of each subsection.

*United States v. Grider*, 617 F. Supp. 3d 42 (D.D.C. 2022). This precedent forecloses Box's claims.[3]

## I. <u>Count One is Sufficient as Written in the Indictment</u>

Earlier this year, Judge Howell dispensed with arguments akin to defendant's regarding sufficiency of the same charge in the indictment. Her reasoning in *Carnell* applies with equal force here.

> In assessing the sufficiency of the Indictment, "[w]e begin with the plain language of the indictment to ensure 'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" Count One charges that, on January 6, 2021, "within the District of Columbia and elsewhere," defendants "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is . . . Congress's certification of the Electoral College vote[.]" By "echo[ing] the operative statutory text while also specifying the time and place of the offense," *Williamson*, 903 F.3d at 130, the Indictment satisfies Rule 7(c)(1) and the "two constitutional requirements for an indictment[.]" The Indictment "set[s] forth all the elements necessary to constitute the offence intended to be punished." Specifically, Count One informs defendants of the date, place, and precise offense of which they are accused, "parroting the language of a federal criminal statute," which "is often sufficient," to meet constitutional requirements.

---

[3] Throughout his 90-page motion, the defendant repeatedly references various oral arguments, including the parties' oral arguments and questions posed by the Justices of the Supreme Court in the recent arguments in *Fischer. See, e.g.,* ECF 75 at 13 n. 10, 49, 75, 79, 80-81, 81 n. 6, 83. Because oral arguments or hypotheticals raised by judges are not law, the government need not address defendant's repeated references to them. *See, e.g., Rangel v. United States*, 155 F. Supp. 2d 949, 954 (N.D. Ill. 2001) ("First, the views of a justice at oral argument are not law. The questions and statements that justices and other judges make at oral argument on appeal are made to satisfy their concerns about the arguments raised by the parties, and do not represent binding statements of law. The law is in the holdings of the published opinions voted on by the Court in the cases.") (citing *United States v. Grace*, 461 U.S. 171, 183, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) ("Court decisions are made on the record ... and in accordance with the applicable law. The views of the parties and of others are to be presented by briefs and oral argument.")).

*See* Mem. Order, *United States v. Carnell*, 23-cr-139-BAH, ECF 79 at 9 (citations omitted) (January 9, 2024). Thus, for this initial reason, Box's indictment is sufficient as written.

### A.    Courts in this District Have Held that Section 1512's Plain Terms, Including the Term "Otherwise," Are Not Vague

Defendant also argues that Congress did not intend the term "otherwise" as used in Section 1512(c) to allow for such a "broad obstruction prohibition." ECF 75 at 10-16.  This is foreclosed by Circuit precedent. In *Fischer*, the D.C. Circuit addressed three consolidated January 6 cases where Judge Nichols held that Section 1512(c)(2) "'requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.'" 64 F.4th at 334 (quoting *United States v. Miller*, 589 F. Supp. 3d 60, 78 (D.D.C. 2022)). Because the indictments in the cases on appeal did not allege that the defendants "violated § 1512(c)(2) by committing obstructive acts related to 'a document, record, or other object,' [Judge Nichols] dismissed the § 1512(c)(2) counts" in all three cases. *Id.* The government filed interlocutory appeals and the D.C. Circuit reversed, rejecting Judge Nichols's reading of Section 1512(c)(2).

The *Fischer* panel held that Section 1512(c)(2) contains no requirement that the obstructive acts be done with respect to a document or record and that the alleged actions of the January 6 rioters in the cases before the panel "fall[] comfortably within the plain meaning" of the statute's prohibition. *Id.* at 350. But the *Fischer* panel went further than that, ruling that "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to *all forms of corrupt obstruction* of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336 (emphasis added). The *Fischer* court concluded that "[this] broad interpretation of the statute—encompassing all forms of obstructive acts—is unambiguous and natural, as confirmed by the 'ordinary,

13

contemporary, common meaning' of the provision's text and structure." *Id.* at 337 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Although the *Fischer* panel splintered in its discussion of the *mens rea* required for a defendant to act "corruptly," *see id.* at 351-363 (Walker, J., concurring in part), the portion of the *Fischer* panel opinion concerning the *actus reus* required to violate Section 1512(c)(2) was authored by Judge Pan and joined by Judge Walker; it thus constitutes *Fischer*'s binding holding, *see id.* at 336-340; *see also United States v. Brock*, 21-cr-140 (JDB), ECF 107 at 6. *Fischer* thus confirms that the indictment in this case is sufficient.

Earlier this year, the D.C. Circuit affirmed this broad reading of Section 1512(c)(2)'s *actus reus* in *United States v. Brock*. No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024). Rejecting the defendant's argument that Section 1512(c)(2) is limited to acts of "evidence impairment" or "actions taken with respect to a document, record, or other object," the D.C. Circuit explained that "[u]nder *Fischer* . . . Section 1512(c)(2) serves as a 'catch-all' provision 'that covers otherwise obstructive behavior that might not constitute a more specific offense involving documents, records, or objects under [Section] 1512(c)(1).'" *Id.* at *4 (quoting *Fischer*, 64 F.4th at 337). As *Brock* makes clear, so long as *Fischer* remains the governing law of this Circuit, the defendant's argument is meritless.

These decisions have confirmed that, specifically with respect to the term "otherwise," the term is consistent with its ordinary meaning, and conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes. *See id.; see also, e.g., United States v. Sandlin*, 575 F. Supp. 3d 16, 25 (D.D.C. 2021) ("Section 1512(c)(2) gives defendants fair warning in plain language that a crime

14

will occur in a different ("otherwise") manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records.") (quoting *United States v. Petruk*, 781 F.3d 438, 446–47 (8th Cir. 2015) (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition in that statute applies "without regard to whether the action relates to documents or records")); *United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering"); *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com (defining otherwise as "in another way" or "in any other way"); *see also Gooch v. United States*, 297 U.S. 124, 127-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "for ransom or reward or otherwise" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

For these reasons, the defendant's first argument should be rejected.

### B.   The Certification Was An "Official Proceeding" Within the Meaning of Section 1512

The defendant next spends twenty-five pages of his motion arguing that 18 U.S.C. § 1512(c)(2) does not cover his criminal conduct because the session of Congress convened to certify the votes of the Electoral College "was not an official proceeding" within the meaning of

the statute. ECF 75 at 16-41. Despite the heading, most of defendant's argument is actually about limitations on the *actus reus* of Section 1512, not whether the Joint Session was a proceeding before the Congress. In any event, his argument fails: both D.C. Circuit and this Court have addressed and rejected defendant's arguments outright. *See United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir.), *cert. granted*, 144 S. Ct. 537, 217 L. Ed. 2d 285 (2023) (agreeing with district court that "the Electoral College count is an 'official proceeding'" and rejecting appellees' reliance on cases such as *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) for appellees' proposed "narrower, alternative definition of 'proceeding'"); *Grider*, 585 F. Supp. 3d at 24–28 (same).

"The statutory definition of 'official proceeding' under § 1512(c)(2)," the D.C. Circuit has held, "includes a 'proceeding before the Congress.'" *Fischer*, 64 F.4th at 342-43 (quoting 18 U.S.C. § 1515(a)(1)(B)). "Although appellees strain to argue that the Electoral College vote certification is not a 'proceeding before the Congress' because it does not involve 'investigations and evidence,' we see no such limit in the ordinary meaning of the word 'proceeding.'" *Id.* (citing *Proceeding*, Oxford English Dictionary (2d ed. 1989) ("[T]he carrying on of an action or series of actions.")). "Notably," the Circuit continued, "Congress follows statutory directives to complete the certification of the Electoral College vote, including: (1) convening a joint session at 1:00 PM on January 6 in the year following the presidential election; (2) appointing four tellers to read and list the votes; (3) announcement of the voting results by the President of the Senate; and (4) allowing written objections from members of Congress, subject to a procedure for submitting and resolving such objections. Those directives reflect Congress's own intent that the vote

certification shall be a 'proceeding before the Congress.'" *Id*. at 343 (citing the Electoral Count Act).

This Court should refuse to adopt Box's definition of "official proceeding" that is "inapt when interpreting the meaning of a 'proceeding *before the Congress*.'" *Id*. (quoting 18 U.S.C. § 1515(a)(1)(B)); *see also Puma*, 596 F. Supp. 3d at 97-102 ("The Court concludes that Congress' activities on January 6, 2021, clearly constitute a formal assembly akin to a hearing and thus fall within this definition of an 'official proceeding' before 'the Congress.'"). And even if the Court did limit proceedings to those that are quasi-adjudicative in nature, the Joint Session would qualify. *McHugh*, 583 F. Supp. at 17–18 (observing that defendant "is charged with obstructing one of the very few congressional proceedings that actually <u>is</u> adjudicative… It is [] unambiguously an occasion on which Congress "adjudicates"). Therefore, this argument should also be rejected.

###     C.    The Definition of "Corruptly"

The Defendant also attacks the interpretation of "corruptly" that he claims were adopted in *Fischer*, *Robertson*, and *Brock*.  But these are D.C. Circuit decisions, so however the defendant wishes to quibble with them, they remain binding.[4]  And the defendant is wrong to suggest that any of those opinions hold that "corruptly" requires independently felonious violent conduct. Consistent with the D.C. Circuit, moreover, judges in this district have construed 'corruptly' to require 'a showing of dishonesty' or an 'improper purpose'[;] 'consciousness of wrongdoing'[;] or conduct that is 'independently criminal,' 'inherently malign, and committed with the intent to

---

[4] While the Court can simply follow the D.C. Circuit in rejecting defendant's arguments about the meaning of corruptly, further support for the government's (and courts') view of the statute is in its D.C. Circuit brief in *United States v. Robertson*, No. 22-3062, Document # 1984664, at 20-39 (Feb. 20, 2023).

obstruct an official proceeding.'" *Puma*, 596 F. Supp. 3d at 103 (D.D.C. 2022).  Defendant invokes *United States v. Poindexter*, 951 F.2d 369, 377 (D.C. Cir. 1991), but, as many judges have explained, his reliance is misplaced. *See e.g.*, *Puma*, 596 F. Supp. 3d at 103-105. Much of defendant's argument raises vagueness concerns – which have also been roundly rejected, and which are addressed further below.

### D.    The Rule of Lenity Does Not Apply

Although the defendant mentions the rule of lenity in passing only (*see* ECF 75 at 5, 13 n. 9, 49), the D.C. Circuit has rejected application of the rule of lenity with respect to the Section 1512 charge. The rule of lenity applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Fischer*, 64 F.4th at 350 (quoting *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (1994)). In addressing the same argument from another January 6 defendant, the Circuit concluded, "the language of § 1512(c)(2) is clear and unambiguous. Restraint and lenity therefore have no place in our analysis." *Id.*

### E.    An Aiding and Abetting Liability Theory Need Not Be Specifically Pled

Although the defendant does not dedicate a full subsection to this argument, he does argue in passing that "the Indictment fails to provide statutory language or any other context for aiding and abetting liability in Count One. At the very minimum, an indictment should track the language of the statutes at play, including 18 U.S.C. § 2 . . . But, here, none of the essential elements for aiding and abetting under Section 2 are even listed. Nor is any context given. Accordingly, Count One should be dismissed." ECF 75 at 9-10.

This argument underscores a fundamental misunderstanding of the law on an aiding and abetting liability theory: the governing authority plainly dictates that the government is not required to specifically cite 18 U.S.C. § 2 or use "aiding and abetting" language in an indictment. Thus, absent any authority to the contrary–and the defendant has provided none–the defendant's argument that the failure to cite "aiding and abetting" in the indictment precludes the government from relying on that theory at trial is a losing one. Rather, it is well-established that Section 2 does not define a substantive offense and, for this reason, need not be specifically pled in the indictment: "[a]iding and abetting simply describes the way in which a defendant's conduct resulted in the violation of a particular law. . . . Because the aiding and abetting provision does not set forth an essential element of the offense with which the defendant is charged or itself create a separate offense, *aiding and abetting liability need not be charged in an indictment*." *See, e.g., United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010) (emphasis added).

The D.C. Circuit has also held that "an indictment need not specifically include an aiding and abetting charge because, "'whether specified or not,' the federal statute creating liability for aiding and abetting . . . 'is considered embodied in full in every federal indictment.'" *See e.g.*, *United States v. Kelly*, 552 F.3d 824, 832 (D.C. Cir. 2009) (quoting *United States v. Lam-Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991)); *United States v. Ginyard*, 511 F.3d 203, 212 (D.C. Cir. 2008) (same). Thus, whether aiding and abetting or Section 2 are explicitly cited, "*all* indictments for substantive offenses must be read as if the alternative provided by 18 U.S.C. § 2 were embodied in the indictment." *E.g.*, *United States v. Pearson*, 667 F.2d 12, 13 (5th Cir. 1982) (emphasis added); *United States v. Lester*, 363 F.2d 68 (6th Cir. 1966) ("it has been long held that an indictment need not specifically charge 'aiding and abetting'").

19

Given that long and well-established rule of law, the defendant cannot credibly argue a lack of notice on an aiding or abetting liability theory. Indeed, he must presume, consistent with the law, that every charge in an indictment embodies an aiding and abetting theory of liability. As the Seventh Circuit aptly put it: "every competent member of the defense bar should be aware" that "[a]iding and abetting is not a separate crime but a fundamental principle of criminal liability." *United States v. Powell*, 652 F.3d 702, 708 n.4 (7th Cir. 2011).

## II.   Section 1512(c)(2) Is Not Unconstitutionally Vague

The defendant fills the next twenty pages of his motion with many of the same arguments he raised in preceding sixty-three pages regarding the terms "otherwise," "official proceeding," and "corruptly," as used in Section 1512. However, this time, he repackages those arguments as follows: "Count One suffers another fatal flaw: because of terms such as 'corruptly,' 'otherwise,' 'obstruct,' 'influence,' 'impede,' and 'official proceeding,' Section 1512(c) is unconstitutionally void for vagueness, facially and as applied, in violation of the Due Process Clause . . .." ECF 75 at 63.

As an initial matter, these arguments are irrelevant at this stage because Count One is properly pled. Recognizing that the court had not agreed upon a definition of "corruptly," for example, Judge Walker in *Fischer* explained that the indictments in *Fischer* and the two companion cases nonetheless "should be upheld" because "[e]ach contains 'the essential facts constituting the offense charged.' That's because they allege that the Defendants 'corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote." *Fischer*, 64 F.4th at 361 (Walker, J., concurring) (quoting Fed. R. Crim. P. 7(c)(1)).

20

So too here: the indictment sufficiently alleges that the defendant acted corruptly, and the Court can leave the exact definition of that term for another day, when the issue is properly before the Court.

Even reaching defendant's claim, though, the Court should find that it is again foreclosed by D.C. Circuit precedent, which has found that "corruptly" is not vague as applied to a January 6 defendant like Box.

### A.    The Plain Terms of the Statute are Not Vague

Moreover, as noted above, a criminal statute is unconstitutionally vague only if the statute "specifie[s] 'no standard of conduct at all.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971)). Here, both *Robertson* and *Fischer* concluded that "the language of § 1512(c)(2) is clear and unambiguous." *Fischer*, 64 F.4th at 350; *see Robertson*, 86 F.4th at 371 n.7 (noting "the uphill battle a vagueness challenge" regarding the term "corruptly" "would face in light of [defendant's] use of wrongful . . . means with the intent to obstruct an official proceeding"); *see also Spencer*, 2023 WL 6795858, at *4 ("reject[ing] Defendant's argument that the term 'corruptly' is vague such that § 1512(c)(2) is rendered unconstitutional"); *United States v. Bennett*, No. CR 21-312 (JEB), 2023 WL 6460026, at *3 (D.D.C. Oct. 4, 2023) ("While there was no consensus [in *Fischer*] as to the exact definition of the term ["corruptly"], neither judge in the majority evinced any belief that § 1512(c)(2) was unconstitutionally vague."); *United States v. Connell*, No. CR 21-0084 (PLF), 2023 WL 4314903, at *6 (D.D.C. July 3, 2023) ("[T]he term 'corruptly' provides notice to [defendants] of what Section 1512(c)(2) prohibits and [] the statute is not unconstitutionally vague as applied to them.");

*United States v. Mock*, No. CR 21-444 (JEB), 2023 WL 3844604, at *4 (D.D.C. June 6, 2023) (similar). Even Judge Nichols did not hold that the terms in Section 1512(c)(2) that Box criticizes were unconstitutionally vague; rather, he found that they meant something different.

Although the D.C. Circuit did not resolve the meaning of the term "corruptly" in *Fischer*, both judges who joined the lead opinion determined that term is not unconstitutionally vague as used in Section 1512(c). *See Fischer*, 64 F.4th at 339-42 (Pan, J.) (explaining that, under any formulation, "'corrupt' intent exists at least when an obstructive action is independently unlawful," and that "appellees err in arguing that the term 'corruptly' 'takes on unconstitutional vagueness' in circumstances outside the context of a judicial proceeding"); *id.* at 352 (Walker, J.) (explaining that his interpretation of "corruptly" "avoids vagueness"). And this Court generally has agreed. *See, e.g., Spencer*, 2023 WL 6795858 at *4. Thus, Section 1512(c)(2) is not so vague as to "specify no standard of conduct at all." *Bronstein*, 849 F.3d at 1107. Thus, defendant's vagueness challenge fails.

More recently, in *United States v. Robertson*, the D.C. Circuit agreed that the term "corruptly," as used in Section 1512(c)(2) withstands a vagueness challenge. 86 F.4th 355, 369 (D.C. Cir. 2023). The *Robertson* court did not seek to identify *all* of the "multiple ways" in which Section 1512(c)(2)'s corrupt intent requirement could be satisfied. *Id.* at 368. Rather, it explained that the definition used in that case, which treated independently unlawful conduct as "corrupt," was not vague and, instead, "provide[d] an objective measure of culpable conduct that is straightforward to apply." *Id.* at 368–69. And, in *Brock*, the D.C. Circuit held that the district court did not clearly err by reading "corruptly" to require a showing of "dishonesty, an improper

purpose, or consciousness of wrongdoing," noting that *any one of these showings* may be sufficient to establish corrupt intent. *Brock*, 2024 WL 875795 at *6.

Indeed, upon information and belief, every district court in the January 6 context, aside from Judge Nichols, has promulgated jury instructions adopting some form of the language referenced in *Brock*—requiring a showing of dishonesty, an improper purpose, or consciousness of wrongdoing—often adding that the defendant must use unlawful means or act with an unlawful purpose. *See, e.g.*, *United States v. Sara Carpenter*, 21-cr-305-JEB (ECF 95); *United States v. Thomas Robertson*, 21-cr-34-CRC (ECF 86); *United States v. Dustin Thompson*, 21-cr-161-RBW (ECF 83); *United States v. Anthony Williams*, 21-cr-377-BAH (ECF 112); *United States v. Elmer Rhodes, et al*, 22-cr-15-APM (ECF 396); *United States v. Douglas Jensen*, 21-cr-6-TJK (ECF 97). Under any of these common-sense constructions, the term "corruptly" "not only clearly identifies the conduct it punishes; it also 'acts to shield those who engage in lawful, innocent conduct—even when done with the intent to obstruct, impede, or influence the official proceeding.'" *Puma*, 576 F. Supp. 3d. at 103 (quoting *Sandlin*, 575 F. Supp. 3d at 33).

Nor have any courts in this district found vague any of the other terms Box criticizes. The D.C. Circuit has now construed the statute in three recent opinions, *Brock, Fischer,* and *Robertson,* which are inconsistent with the idea that the several terms Box mentions are "so standardless that [they] invite arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Specifically, courts have rejected defendant's suggestion that Section 1512(c)(2) only prohibits obstructive acts that impair the integrity of any documents (*see, e.g.,* ECF 75 at 24, 26-27, 45, 48, 51 n. 30, 71 n. 42) or "felonious *violent* conduct" (ECF 75 at 79 (emphasis added)). *See, e.g.,* Mem. Order, *United States v. Carnell*, 23-cr-139-BAH, ECF 79 at 11-12 (record citations omitted)

(January 9, 2024) ("[A]llegations of [document destruction-adjacent] conduct are not a prerequisite for application of Section 1512(c)(2). . . . Likewise, insofar as defendants challenge Count One for not charging obstruction of Congress's certification of the Electoral College vote by means of another felony offense, such as assault under 18 U.S.C. § 111(a), that argument is foreclosed."). As to the word "otherwise," as discussed in Section I, above, "Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ("otherwise") manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records." *Sandlin*, 575 F. Supp. 3d at 25  (quoting *Petruk*, 781 F.3d at 446–47); *see also United States v. Caldwell*, 581 F. Supp. 3d 1, 16 (D.D.C. 2021) (rejecting vagueness challenge to the term "official proceeding"). "It is difficult to fathom that a reasonable person would not believe the Electoral College certification was an official proceeding . . . ; indeed, this is precisely the reason why the January 6 rioters wished to stop it." *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021).

Courts throughout this district have successfully instructed juries on this statute. The void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam). Similarly, the fact that a term is *broad* does not mean that it is *vague.* Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975). Vagueness is a high bar, and Box cannot meet it.

### B.   Section 1512(c)(2) is not Vague as Applied to the Defendant, Whose Conduct Falls Within the Statute's Scope

The defendant next rehashes similar arguments with respect to those same statutory terms –"official proceeding," "otherwise," and "corruptly"– this time arguing that Section 1512(c)(2) is

unconstitutionally vague as applied to the defendant. *See* ECF 75 at 76 - 84. He also adds that the terms the terms "influence" and "impede" present a similarly "clear issue: all protests are meant to influence or impede. Accordingly, it is arguable that anyone who went to protest or otherwise voice their opinions on January 6 and not engage in violence would not have expected to be charged with Section 1512(c)(2)." *Id.* at 80. The defendant continues, "[a]t present, how is one ever to know when that line is crossed from disruptive conduct to corruptly obstructing, influencing, or impeding, and, more significantly, where that line even is? '[S]tanding alone or as construed,' the statute does not make the purported criminality reasonably clear." *Id.* at 83 (citation omitted). Finally, the defendant paints a skewed picture of the facts to which he stipulated, attempting to improperly cabin his criminal conduct. *Id.* at *e.g.*, 62. All of defendant's arguments here are meritless.

Initially, the defendant's motion is an attack on the sufficiency of the indictment. Therefore, "[t]he Court is not asked to review the sufficiency of the evidence" against the defendant, "which the government has yet to offer." *See, e.g., United States v. Montgomery*, 578 F. Supp. 3d 54, 58 (D.D.C. 2021). "Instead, the sole question before the Court is the legal sufficiency of the indictment, and the Court's role in considering that question 'is limited to reviewing the face of the indictment and, more specifically the language used to charge the crimes.'" *Id.* (citations omitted). As noted throughout, both the D.C. Circuit and this Court have repeatedly upheld indictments charging January 6 defendants with violating Section 1512(c)(2) using identical charging language.

The D.C. Circuit's decisions in *Fischer, Robertson* and *Brock* also dispose of Box's claim. As this Court recognized in *Spencer,* in *Fischer,* "a two-judge majority of the D.C. Circuit panel

concluded that Defendant's kind of conduct is within the meaning of the word 'corruptly' under Section 1512(c)(2), and the D.C. Circuit upheld indictments charging such conduct." *Spencer*, 2023 WL 6795858, at *4 (citation omitted); *see also Fischer*, 64 F.4th at 342 ( "[I]t is beyond debate that appellees and other members of the public had fair notice that" their plainly criminal conduct, such as "assaulting law enforcement officers," which was done "in an effort to prevent Congress from certifying election results[,] was 'wrongful' and 'corrupt' under the law"). Box's vagueness challenge fails.

In *Robertson* and *Brock,* the D.C. Circuit affirmed convictions under Section 1512(c)(2), finding in each case that the government had proven that the defendant had acted corruptly. Neither found that the term was vague, and each involved similar circumstances as here: in *Robertson,* the defendant engaged in independently felonious conduct as part of his obstruction (like Box, a violation of the civil disorder statute), and, in *Brock*, "[t]he evidence showed that Brock participated in a riot that sought to overturn the 2020 presidential election by force, and that he was himself prepared to take violent action to achieve that goal[,]" that his "actions on January 6th also confirm that 'he expected that events might get violent[,]' and that 'he knew any attempts to enter the Capitol would require 'storming' it, which would, of course, be illegal.'"). These decisions establish that Section 1512(c)(2) is not vague as applied to defendants like Box.

Defendant also offers his own view of the facts. While such factual issues are not proper fodder for a motion to dismiss, his arguments ignore the actual, *stipulated* facts of *this* case, which is what an as-applied challenge is meant to address: the defendant plainly (and admittedly) entered the U.S. Capitol Building, where he knew the Electoral College Vote was taking place, after watching rioters shatter and climb through windows next to the Senate Wing Door, thereby

26

allowing them to open that door from the inside. *See generally* ECF 73. Indeed, as he watched those rioters shatter windows and climb into the building through them, he exclaimed, "We're fucking in… holy shit!" *Id.* (emphasis added). Then, he entered the Capitol through that door, the Senate Wing Door, at 2:14 p.m., as emergency alarms were blaring. *See id.* He then proceeded to threaten violence inside the Building by, among other things, yelling the following at U.S. Capitol Police officers as they were overwhelmed in the Crypt: "DON'T FUCKIN' TREAD ON US!" and, in response to one officer's pleas for rioters to calmly talk things out as opposed to resorting to violence, "THERE'S NO TALKING, THERE'S NO FUCKING TALKING!" *See id.* Finally, the defendant repeatedly attempted to, and did, physically hold open the East Rotunda Doors as police were trying to close then while beckoning to the mob, "WE NEED MORE PEOPLE!!!" *See id.* Around that time, he also actively celebrated as the mob near the East Rotunda Doors successfully warded off the police's attempt to keep the doors closed. *See id.*

As this short summary of relevant stipulated facts demonstrates, the defendant clearly was not just "anyone who went to protest or otherwise voice their opinions on January 6 and not engage in violence." *See* ECF 75 at 80. He also was not simply acting upon "his aspirations of becoming a well-known social media influencer, journalist, and political commentator." *Id.* at 62. Perhaps most concerningly, the defendant was not simply becoming "a little politically vocal at times," as he absurdly submits, when he shouted at officers not to "tread" on him and invoked violence when stating that "talking" was insufficient. *Id.* at 62, 62 n. 34. Instead, he threatened violence against officers and impeded their ability to perform their official duties, all so that he and the mob he joined could keep their preferred candidate in office. A person "who engages in some conduct that is clearly proscribed cannot complain of vagueness of the law as applied to the conduct of others."

27

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982). The evidence reflects Box's intent to obstruct an official proceeding, his pursuit of an unlawful purpose and use of unlawful means, and consciousness of wrongdoing. The law is not vague as applied to him, and his vagueness challenge must fail.

The defendant also argues that the "novel" prosecutions under Section 1512(c)(2) demonstrate vagueness, and further claims that the government "seems to keep moving the ball" on charging Section 1512(c)(2), shifting from "individuals who went into the Senate chamber, to individuals who went inside the Capitol, to individuals who never entered the Capitol but interacted directly with law enforcement even if they never went inside the Capitol, etc.)."  ECF 75 at 80. Both arguments fail. The fact that a prosecution is novel does not render it vague. "If that were the case, countless initial prosecutions under new criminal statutes would be constitutionally deficient." *Caldwell*, 581 F. Supp. 3d at 16. "'Fair notice'" rests instead on whether the statute itself "provides a discernable standard when legally construed." *Id*. (citing *Bronstein,* 849 F.3d at 1108).

Box's description of the government's so-called shifting standard, meanwhile, is factually incorrect. Instead, publicly available charging information makes clear that the government had begun charging individuals with violating Section 1512(c)(2) who did not enter the U.S. Capitol Building as early as January 27, 2021, barely twenty days after the January 6 attack on the Capitol. *See, e.g., United States v. Guy Reffitt,* 21-cr-32-DLF, ECF 4 (January 27, 2021 indictment charging Section 1512(c)(2) violation, despite that he did not enter the U.S. Capitol Building); *see also, e.g., United States v. Hostetter*, *et al.*, 21-cr-392-RCL, ECF 1 (June 9, 2021 indictment charging defendants Hostetter, Taylor, Kinnison, Mele, and Martinez with Section 1512(c)(2) violations,

despite that they did not enter the U.S. Capitol Building); *United States v. Kenneth Thomas*, 21-cr-00552-DLF, ECF 20 (September 9, 2021 indictment charging Section 1512(c)(2) violation, despite that he did not enter the U.S. Capitol Building). Moreover, "Discretionary prosecutorial decisions cannot render vague as applied a statute that by its plain terms provides fair notice." *Caldwell*, 581 F. Supp. 3d at 16.

### C.   Section 1512(C)(2) is Not Vague Vis-à-Vis the First Amendment

In one brief paragraph, the defendant also argues that Section 1512(c)(2) is vague specifically with respect to the First Amendment, but then largely relies on the same recycled arguments as above: the statute's terms are ambiguous because, "[f]or instance, the use of undefined terms such as 'influence' and 'corruptly' will 'provoke uncertainty among speakers about . . . what they mean." *See* ECF 75 at 84. Again, this argument should be rejected because courts have uniformly held that Section 1512(c)(2) is not vague, whether on First Amendment grounds or otherwise.

### III.   <u>Section 1512(c)(2) Is Not Unconstitutionally Overbroad</u>

Finally, the defendant argues that "there is also a concern with the allegations against Mr. Box based on a violation of Sections 1512(c)(2), 2 being unconstitutionally overbroad." *See* ECF 75 at 84. This Court has rejected similar arguments: "As other courts of this jurisdiction have concluded, obstruction is not expressive conduct, much less protected expressive conduct, particularly so for obstruction done 'corruptly[.] Even were [the defendant's] alleged actions expressive, behavior within the Capitol buildings that prevents 'Congress [from] peaceably [ ] carry[ing] out its lawmaking responsibilities' is not speech protected by the First Amendment.

Accordingly, [the defendant's] First Amendment challenge to his 1512(c) charge fails." *Grider*, 617 F. Supp. 3d at 53 (citations omitted). It should reject these arguments again today.

## CONCLUSION

For all these reasons, the defendant's motion to dismiss Count One should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By:      */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov