UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>DOMINIC BOX,<br><br>    Defendant. | Criminal Action No. 22-413 (CKK) |

**MEMORANDUM OPINION & ORDER**
(January 22, 2025)

**I.**

The Government charged Defendant Dominic Box by indictment with seven felony and misdemeanor counts for his conduct during the riot at the United States Capitol on January 6, 2021. *See* Superseding Indictment, ECF No. 63. In June 2024, the Court held a bench trial on those charges. Min. Entry (June 18, 2024). At the bench trial, Box agreed under oath that a written statement of stipulated facts was "true and actually did occur." Bench Trial Tr., ECF No. 98 at 20:12–14. The Court reviewed those facts with Box, and—again under oath—Box agreed with, or did not contest, each individual stipulation. *See id.* at 38:17–94:6, 98:5–108:11, 179:6–187:18. The Government also presented substantial video evidence supporting the parties' factual stipulations, and Box agreed that these videos depicted him. *See, e.g., id.* at 66:3–67:8, 72:3–14, 87:3–103:4, 82:6–16, 84:15–85:15, 87:25–90:25.

After a period of delay occasioned by the Supreme Court's announcement of its opinion in *Fischer v. United States*, 144 S. Ct. 2176 (2024), the Court dismissed Count One of the Superseding Indictment (charging Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2)) and proceeded to render a verdict on the remaining counts. *See* Mem. Op. & Order,

1

ECF No. 101 at 3. Based on the parties' stipulations and the Government's exhibits, the Court found Box guilty beyond a reasonable doubt of:

- Count Two: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);
- Count Three: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);
- Count Four: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);
- Count Five: Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);
- Count Six: Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and
- Count Seven: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

*Id.* at 4–15.

The Court made specific factual findings supporting these guilty verdicts. *Id.* While Box stood outside the Capitol building on January 6, 2021, he observed police officers using pepper spray against individuals to deter them from entering the grounds. Undeterred, Box followed the crowd as it pushed a small group of outnumbered Capitol Police officers across the grounds, up the northwest staircase, and to the façade of the Capitol itself. There, he paused to film as rioters shattered and climbed through windows on the ground floor of the Capitol. Aided by the rioters he had just watched break into the building, Box entered the Capitol through the Senate Wing Door at 2:14 PM. He was among the first group of rioters to enter the building.

Once inside, Box joined a crowd of rioters that overwhelmed officers and surged into the Capitol Crypt. Inside the Crypt, an officer attempted to defuse the volatile situation by asking the crowd to calm down and avoid "any more violence." Box walked up to that officer and shouted "There's no talking, there's no fucking talking!" As the mob overran the officers in the Crypt, Box—who was filming the scene—proclaimed, "This is awesome!"

Box then briefly exited the Capitol before returning inside moments later. An officer immediately told him "You don't want to be in here." And Box left again. But half an hour later, Box was back inside the Capitol—this time entering through the East Rotunda door. Box lingered around the door, which had been smashed and shattered, as officers pushed the crowd back outside and sealed the entrance. When rioters forced the door open again and pressed against the officers in the threshold, Box turned the crowd and yelled "We need more people."

Box is scheduled to be sentenced for his two felony convictions and four misdemeanor convictions on February 21, 2025. Min. Order (Oct. 22, 2024).

**II.**

On January 21, 2025, the Government moved to dismiss the indictment against Box "with prejudice" under Federal Rule of Criminal Procedure 48(a). Gov't's Mot. to Dismiss, ECF No. 110. As the "reason for this dismissal," the Government cites an as-yet unnumbered presidential Proclamation titled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." *Id.* That Proclamation, in relevant part, "direct[s] the Attorney General to pursue dismissal with prejudice to the Government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Unnumbered Proclamation, __ Fed. Reg. ____ (Jan. 20, 2025), https://perma.cc/W4NT-4K4S. Box has indicated his consent to the Government's motion. Def.'s Mot. to Expedite, ECF No. 111.

By its terms, Rule 48(a) allows the Government, "with leave of court" to "dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a). It does not explicitly grant either the Government or the trial court the authority to vacate or set aside a plea of guilty, a jury verdict, or a court's findings of fact and conclusions of law following a bench trial. *See id.*; *see also United*

3

*States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006) (noting that "both the text of [Rule 48] and its roots in the common law doctrine of *nolle prosequi* cast doubt on Rule 48's applicability post-conviction" without deciding whether Rule 48 "can properly be used to vacate a final conviction"); *Rice v. Rivera*, 617 F.3d 802, 810 (4th Cir. 2010) (questioning whether Rule 48 allows dismissal following "conviction and unsuccessful direct appeal" without resolving whether dismissal under Rule 48 was proper under those circumstances).

However, the U.S. Court of Appeals for the D.C. Circuit has indicated in dicta that the Government may seek dismissal of criminal charges under Rule 48(a) at least until a judgment becomes final on direct appeal. *See United States v. Knight*, 981 F.3d 1095, 1109 (D.C. Cir. 2020) (citing *Rinaldi v. United States*, 434 U.S. 22 (1977)); *see also Smith*, 467 F.3d at 788–89 (concluding that trial courts have jurisdiction to entertain Rule 48 motions "after sentencing and appeal"); *cf. Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) ("There is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended."). It follows that the Government may also seek dismissal under Rule 48(a) before the trial court has sentenced the defendant. Consistent with that conclusion, at least two courts in this District have granted Rule 48(a) motions filed after trial but before sentencing. *See United States v. Venkata*, 709 F. Supp. 3d 9, 19 (D.D.C. 2024) (RDM); *United States v. Purdy*, No. 22-cr-19-1, 2025 WL 219111, at *2 (D.D.C. Jan. 14, 2025) (RCL).

Upon consideration of the relevant authority, this Court agrees that Rule 48(a) is a proper vehicle for dismissal of a criminal case "with leave of the court" before sentencing. The Court must therefore consider whether to grant its leave to dismiss this case. *See United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (noting that the "requirement of judicial leave" in Rule 48 "gives the court a role in dismissals following indictment," even when "the defendant

concurs in this dismissal"); *United States v. Flynn*, 507 F. Supp. 3d 116, 126–31 (D.D.C. 2020) (EGS) (analyzing the scope of a trial court's discretion under Rule 48(a)); *see also Rinaldi*, 434 U.S. at 30 n.15 (noting that Rule 48 "obviously vest[s] some discretion in the court" without deciding whether that discretion extends to cases in which the defendant consents to dismissal). To inform this analysis, the Court may "require a statement of reasons and underlying factual basis" for the Government's motion to dismiss. *See Ammidown*, 497 F.2d at 620.

Here, the Government's only stated reason for pursuing dismissal with prejudice is that the President has ordered the Attorney General to do so. *See* Gov't's Mot. (citing Unnumbered Proclamation, __ Fed. Reg. ____ (Jan. 20, 2025), https://perma.cc/W4NT-4K4S). The Court does not discern—and neither party has identified—any defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal. But recognizing that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the Court shall not require a further explanation here. *See United States v. Nixon*, 418 U.S. 683, 693 (1974).

### III.

Dismissal of charges, pardons after convictions, and commutations of sentences will not change the truth of what happened on January 6, 2021. What occurred that day is preserved for the future through thousands of contemporaneous videos, transcripts of trials, jury verdicts, and judicial opinions analyzing and recounting the evidence through a neutral lens. Those records are immutable and represent the truth, no matter how the events of January 6 are described by those charged or their allies.

What role law enforcement played that day and the heroism of each officer who responded also cannot be altered or ignored. Present that day were police officers from the U.S. Capitol

Police and those who came to their aid when called: the D.C. Metropolitan Police Department, Montgomery County Police Department, Prince George's County Police Department, Arlington County Police Department, and Fairfax County Police Department. Grossly outnumbered, those law enforcement officers acted valiantly to protect the Members of Congress, their staff, the Vice President and his family, the integrity of the Capitol grounds, and the Capitol Building—our symbol of liberty and a symbol of democratic rule around the world. For hours, those officers were aggressively confronted and violently assaulted. More than 140 officers were injured. Others tragically passed away as a result of the events of that day. But law enforcement did not falter. Standing with bear spray streaming down their faces, those officers carried out their duty to protect.

All of what I have described has been recorded for posterity, ensuring that what transpired on January 6, 2021 can be judged accurately in the future.

* * *

In light of the foregoing, it is hereby **ORDERED** that:

- The Government's [110] Motion to Dismiss is **GRANTED**;
- The [63] Superseding Indictment is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Criminal Procedure 48(a);
- All scheduled proceedings and deadlines in this matter are **VACATED**; and
- All pending motions are **DENIED AS MOOT**.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: January 22, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge